A. H. BELO CORP., et al., Appellants,

v.

J. Newton RAYZOR, Appellee.

No. 18535.

Court of Civil Appeals of Texas, Fort Worth.

July 9, 1981.

Rehearing Denied Aug. 20, 1981.

Locke, Purnell, Boren, Laney & Neely and John H. McElhaney and Thomas S. Leatherbury, Dallas, Jackson & Levy, and Hal Jackson, Denton, Roger D. Shipman, Austin, for appellants.

Gray, Whitten & Loveless, and Michael J. Whitten, Denton, Bracewell & Patterson, and Carol Vance, Houston, for appellee.

## OPINION

MASSEY, Chief Justice.

This is a suit for damages for libel to which there was initial response by pleas of privilege by all the defendants. These pleas of privilege were all overruled, with appeals therefrom taken.

We affirm.

Plaintiff was J. Newton Rayzor, a resident of Tarrant County, Texas. Defendants were: (1) Hermas Miller, alleged to be a resident of Denton County at time suit was filed, though his plea of privilege averred his residence to be in Travis County; (2) A. H. Belo Corporation, publisher of the newspaper Dallas Morning News (and for convenience such corporation will be referred to in the opinion as the "Dallas News"), concededly a resident of Dallas County; (3) Dallas Morning News reporter Earl Golz, concededly a resident of Dallas County; (4) Dallas Morning News reporter Stewart Davis, concededly a resident of Travis County.

It is only as applied to Miller that there existed necessity for trial upon the matter of his residence at time the Rayzor suit was filed (December 17, 1979). At the outset we have examined the entire record in a test of the propriety of the implied finding by the trial court that at the material time Miller was a resident of Denton County. We hold the trial court did not err in concluding that Miller's residence was in such county; that because thereof venue of the suit as to him was properly laid. We forego discussion of the evidence because of the nature of the case; as applied to the question a memorandum opinion would have been sufficient.

All of the (nonresident) defendants other than Miller have presented points of error in common, reliance upon complaints therein made being substantially identical though individually asserted. The material complaint by each is that Rayzor failed to show by a preponderance of the evidence that any cause of action for a libel had arisen as against Miller, the resident defendant, and—associated therewith—any cause of action for libel against the nonresident defendants, any or all.

We deem immaterial and without merit the further complaint that Rayzor failed to prove that any of them were necessary parties to his suit against Miller and/or that Rayzor failed to prove by a preponderance of the evidence that at time of his suit Miller was a resident of Denton County. The trial court's implied finding that Miller was a resident in the county of suit has been held properly ruled. By the nature of case upon venue there is no necessity to consider whether any nonresident defendant was a necessary party apart from consideration, kindred thereto, essential to rulings upon pleas of privilege in a suit for libel. It is our intent in the discussion to follow to consider everything essential to tests for reversibility of the trial court's order overruling each of these pleas.

On or about July 21, 1979, sometime between 3:00 o'clock A.M. and 6:00 o'clock A.M., Rayzor was, or became, interested in events transpiring in connection with the operations of North Texas State University (NTSU) in Denton. His interest and concern caused him to act. It was at a time falling between such hours that he communicated by telephone with Miller and others. Pursuant to the communication with Miller, followed by a report by Miller of what Rayzor had said to him to one or more third persons, including a reporter for the Dallas News; and because of the later publication

in a Dallas newspaper by Dallas News (on August 17, 1979), Rayzor deemed himself to have been libeled. The newspaper article will be subsequently set out.

At the material time Rayzor deemed himself to have been a private person, (for purposes of countering the pleas of privilege), without general fame or notoriety, though admittedly having theretofore devoted time to charitable and educational projects in the Denton community. He had never held public office. He was interested in the welfare of the University at Denton and in the past had been appointed a member of the University Development Board, a body of private citizens who sought to raise private funds for university purposes. For his activities in connection therewith he received no pay and there was little publicity of his actions except as one of the board members. Later the N.T.S.U. Educational Foundation, Inc., was formed as a non-profit corporation functioning under the direction of a board of trustees. The Foundation pursued the same ends as those earlier sought by the Board. Rayzor was not one of the original trustees for the Foundation but later accepted an appointment as such (in 1976) and thereafter continued as trustee. His principal responsibility as such was to promote donation of funds to the Foundation for the benefit of NTSU. Here, again, there was minimal publicity of any individual activity by Rayzor apart from his participation as a trustee seeking to advance purposes of the Foundation.

(In his brief Rayzor presents argument that he was a private rather than a public figure—or a "pervasive public figure"—under the distinguishment made by the United States Supreme Court in *Gertz v. Welch*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). Therein was explained that while an individual might participate in community and professional affairs, that alone would be insufficient to properly label him—for purposes of suit by him for libel or slander—as a public figure for all purposes. In the opinion was furthermore stated: "Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life." (418 U.S. at p. 352, 94 S.Ct. at p. 3013). By the decision is indicated that the court had become somewhat alarmed at the construction of what might be termed "the New York Times rule" and its progeny and intended to "fence in" the "open end construction" of *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, 95 A.L. R.2d 1412 (1964), that a plaintiff would be obliged to prove malice as a prerequisite to recovery in a libel case if he was in any degree a "public figure". Indeed, before *Gertz v. Welch, supra*, the author of this opinion heard counsel accustomed to defend suits for libel to jocularly remark that a publisher desirous of attacking one who was not in public office—(and, because he was a public officer, hampered in maintaining a suit for libel because obliged to prove malice (etc.) in connection with any newspaper publication of libel)—should first publish three innocuous news articles concerning the man so as to make of him a "public figure"; then defame him.

■ We construe a holding in *Gertz v. Welch, supra*, to be that where a plaintiff in a libel suit is not a public official and not a "pervasive public figure"; that where he has not sought publicity of the news media or to engage public opinion so as to influence the outcome of some controversy, a trial court should not be held to have erred by ruling him not to be a public figure for purposes of the action.

On background, we would write further in connection with the events of the early morning of July 21, 1979—as recited in the August 17, 1979 article in the Dallas News—but the text of the article itself is sufficient for our purposes. we copy, verbatim, the early portion of the article:

"N T S U booster

quizzed about

alleged threat

"By EARL GOLZ

"and STEWART DAVIS

"(The Dallas Morning News, 1979)

"A Texas Ranger quizzed a trustee of the North Texas State University Educational Foundation Thursday about early-morning telephone calls in which he allegedly threatened two NTSU officers who were cooperating with state investigators looking into fiscal irregularities at the Denton school.

"J. Newton Rayzor, wealthy real estate and ranch developer, was questioned in his Denton office by Texas Ranger Charles Moore about telephone calls made to John L. Carter, Jr., acting NTSU president, and Hermas Miller, vice president of administrative affairs.

"Rayzor denied threatening the two officials.

"Hell no, I didn't threaten them. I passed information on to them," Rayzor said of the calls he made about 3 a. m. July 21.

"Asked what information he gave to the two officials, Rayzor said, 'Why don't you ask them?'

"CARTER AND Miller were called the morning after Carter fired three NTSU vice presidents, after having been given the authority to do so by the board of regents.

"The regents had met in executive session to discuss what additional actions should be taken in response to a House General Investigating Committee report that said state auditors had found illegal diversion of state funds and donors' gifts involving the university's private educational foundation.

"Moore said he 'made an inquiry into' the alleged threats and couldn't consider them 'actual threats.'

" 'They were sort of a derogatory nature,' Moore said. 'Probably a little bit bordering on threats.'

"The Ranger said Carter doesn't 'want to pursue' a complaint against Rayzor 'at this stage if they don't receive any more calls that would be considered threats.'

"Carter said Rayzor told him during the phone conversation 'they were going to get a group to look into it (NTSU firings) and investigate the situation. They were going to hire an outside (law) firm to look into the situation and check up on us—get to the bottom of it.'

"Carter said Rayzor also told him 'they would find out whether we would stay in our position or not.' Carter was named acting president to replace C.C. (Jitter) Nolen, who resigned on the eve of his testimony before the House General Investigating Committee.

"Miller said Rayzor, whom he had never met before, called him at 3 a. m. and told him, 'I'm going to get your ass. The worm has turned and I'm going to hire somebody to get you.'

"Rayzor, who lives in Fort Worth but maintain offices in Denton and Houston, is a wealthy booster of NTSU who worked with Nolen to try to get an educational television channel for the school. He is a good friend of Roy K. Busby, vice president of university relations and secretary to the board of regents of NTSU, who was fired July 20 by Carter.

" . . . . "

On the plea of privilege hearing Rayzor denied having made the statement to Miller reported in the foregoing article; but represented merely a statement to Miller which was, in substance, the same as reportedly made to Carter. The court, sitting as the fact finder, heard evidence to the effect that Miller claimed to have heard Rayzor state exactly as reported in the article, and also heard evidence that the Rayzor remarks were so exaggerated as to become false in the mouth of Miller when repeated to Golz. Were it necessary to support the judgment it could even be said that in the subsequent publishing by Dallas News its reporters, claiming credit for their story, could have been found by the court to have been guilty of gross negligence in publishing by failing to make examination into the validity of what was published in defamation of Rayzor and in reckless disregard of the truth.

Tex.Rev.Civ.Stat.Ann. art. 1995 "Venue", subd. 29 "Libel or slander" (1964), provides as follows:

"No person who is an inhabitant of this State shall be sued out of the county in which he has his domicile except in the following cases:

"29. Libel or slander.—A suit for damages for libel or slander shall be brought, and can only be maintained, in the county in which the plaintiff resided at the time of the accrual of the cause of action, or in the county where the defendant resided at the time of filing suit, or in the county of the residence of defendants, or any of them, or the domicile of any corporate defendant, at the election of the plaintiff."

■ In Clark, Venue in Civil Actions 172 "Libel and Slander", Ch. 29, sec. 1, (1953) "Mandatory Character of the Exception", is stated: "Since this exception covers a specific type of suits and is mandatory in its terms, it is clear that Exception 4 has no application and neither does Exception 29a. . . ." *Elder v. Evatt*, 154 S.W.2d 684 (Tex.Civ.App.—Eastland 1941, no writ). It follows that in order to maintain a suit against a nonresident of a county where he is joined with a resident defendant of the county where the suit is filed, the plaintiff would have to prove a good cause of action against both and not merely a cause of action against the resident/defendant and that the nonresident/defendant was a proper party. Furthermore the rule applicable in some instances, that to avoid a multiplicity of suits the proper venue order is one which holds all defendants together for a single trial, does not apply to libel and slander suits.

In the instant case it was the burden of plaintiff Rayzor, under Exception 29, to adduce evidence, more than a scintilla, sufficient to support the necessarily implied findings in his favor by the trial court, that: (a) defendant Miller was at the material time (when suit was brought against him) a resident of Denton County where the suit had been filed; (b) a cause of action for libel had accrued to Rayzor against Miller; (c) that a cause of action for the same libel (through its publication) had accrued likewise against the Dallas News (A. H. Belo Corp.) under the doctrine of *respondeat superior* and because of there having furthermore been a cause of action for the same libel accrued against agent(s) Golz and/or Davis; that (d) a cause of action for the same libel had accrued against Golz; and (e) the same thing relative to the cause of action against Davis (who had joined Golz in accepting credit for the news article).

■ In arriving at answer to whether or not any nonresident is entitled to have the case as to him transferred because of his plea of privilege the plaintiff will be required to connect each defendant with the wrong. 1 McDonald, Texas Civil Practice *Venue* sec. 4.35 "Art. 1995(29). Libel and Slander" (1981 Rev.).

A rather intense scrutiny of the record is required in order to resolve whether there was support for the trial court's rulings by evidence on the further necessarily implied findings that by act of each defendant there was a libel of Rayzor and that Rayzor was not a public figure.

In 64 Tex.Jur.2d *Words and Phrases* p. 510 (1965) is found:

"*Libel*: Civil libel is any defamation expressed in printing, writing, or by signs, pictures, or drawings that tends to blacken the memory of the dead or to injure the reputation of any person alive and thereby expose him to public hatred, contempt, or ridicule, or to impeach his honesty, integrity, virtue, or reputation, or that punishes the natural defects of anyone and thereby exposes him to public hatred, ridicule, or financial injury. 36 Tex.Jur.2d Libel and Slander, sec. 1.

"The offense of libel is committed by one who, with intent to injure, makes, writes, prints, publishes, sells, or circulates any malicious statement affecting the reputation of another in respect to certain specified matters. To come within the definition of libel, the written, printed, or published statement must convey one of the following ideas: that the person to whom it refers has been guilty of some penal offense; or that he has been guilty of some act or omission that, though not a penal offense, is disgraceful

to him as a member of society, and the natural consequence of which is to bring him into contempt among honorable persons; or that he has some moral vice or physical or mental defect or disease, rendering him unfit for intercourse with respectable society, and that should cause him to be generally avoided; or that he is notoriously of bad or infamous character; or that any person in office or a candidate therefor is dishonest and therefore unworthy of that office, or that while in office he has been guilty of some malfeasance rendering him unworthy of the place. 36 Tex.Jur.2d Libel and Slander, sec. 178.

"*Libelous per se*: The term 'libelous per se' means written or printed words that are so obviously hurtful to the person aggrieved by them that they require no proof of their injurious character to make them actionable. 36 Tex.Jur.2d Libel and Slander, sec. 2n."

██ Unless a question of privilege is involved—and it is not involved in the case before us—malice is presumed or implied and need not be proved in actions where the words used are slanderous per se, 36 Tex. Jur.2d *Libel and Slander* sec. 38 *In general; Malice* (1962). Of course, had the defendants' evidence established Rayzor to have been a public figure, then—because it was established—it would become incumbent that Rayzor prove actual malice on the part of any nonresident defendant in the publication of the libel, for without it a necessary element of liability for libel would be absent. To be observed is that we have prepared the opinion premised upon there having been the implied finding by the trial court that Rayzor was not a public figure; that therefore malice would be presumed, at least for purposes of hearing on pleas of privilege. Though there was request for findings of fact and conclusions of law the trial court made none; and, in a venue case a trial court is not obliged to do so, though often it would be of aid to the appellate court.

██ We have outlined the elements of proof incumbent upon Rayzor as plaintiff

upon the pleas of privilege hearing. We hold that he discharged his burden of proof by evidence, more than a scintilla, having sufficient probative force and effect to support the decision by the trial court which ordered venue retained in Denton County.

All points of error by the defendants have been severally examined and are hereby overruled.

Judgment is affirmed.